JOSEPH H. HUNT
Assistant Attorney General, Civil Division
ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch, Civil Division
BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch, Civil Division
ROBERT M. NORWAY
Trial Attorney (D.C. Bar No. 490,715)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, N.W., Washington, D.C. 20530
Telephone: (202) 353-0889
Email:  robert.m.norway@usdoj.gov
*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ana Adlerstein; Jeff Valenzuela; and Alex Mensing, <br><br> Plaintiffs, <br><br> v. <br><br> United States Customs and Border Protection; Mark Morgan, in his official capacity as Acting Commissioner of United States Customs and Border Protection; United States Immigration and Customs Enforcement; Matthew Albence, in his official capacity as acting director of United States Immigration and Customs Enforcement; Federal Bureau Of Investigation; and Christopher Wray, in his official capacity as director of the Federal Bureau of Investigation, <br><br> Defendants. | CASE NO. 4:19-CV-500-CKJ <br><br> **Defendants' Motion to Dismiss For Lack of Jurisdiction and Failure to State A Claim and, in the Alternative, Partial Motion for Summary Judgment** <br><br> Oral Argument Requested |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS ..................................................................................1

TABLE OF AUTHORITIES...........................................................................2

INTRODUCTION ..........................................................................................1

BACKGROUND ............................................................................................1

APPLICABLE STANDARDS........................................................................5

      I.     Federal Rule of Civil Procedure 12(b)(1) ....................................5

      II.    Federal Rule of Civil Procedure 12(b)(6) ....................................5

      III.   Federal Rule of Civil Procedure 56 ..............................................6

ARGUMENT ..................................................................................................6

      I.     Plaintiffs' Constitutional Claims Fail. .........................................6

              A.    Plaintiffs Lack Standing To Seek Prospective Injunctive Relief. ....................................................................................7

              B.    Plaintiffs' First Amendment Claims Should Be Dismissed...........9

              C.    Plaintiffs' Fourth Amendment Claims Fail................................. 13

                     1.    The Court Should Dismiss Plaintiffs' Fourth Amendment Claims Based On Border Enforcement Activities. ....................................... 13

                          a.    The Authority Governing Suspicionless Searches At Our Nation's Border Is Well-Established........ 14

                          b.    Plaintiffs' Fourth Amendment Claims That The Border Searches Violated The Fourth Amendment Should Be Dismissed. ............................................... 15

                     2.    The Court Should Dismiss The Fourth Amendment Claim Based On Ms. Adlerstein's Arrest Or, In The Alternative, Grant Defendants Summary Judgment. ...... 19

              D.    Plaintiffs' Claims Seeking Expungement Should Be Dismissed.22

                                                                              Page

II.   Plaintiffs' Privacy Act Access Claims Against CBP And
      Their Accuracy And Catch-All Claims Should Be Dismissed............... 22

      A.   The Legal Framework Of The Privacy Act Of 1974. ................ 23

      B.   Plaintiffs' Access Claims Against CBP Are Not Ripe And
           Should Therefore Be Dismissed...................................................... 24

      C.   Plaintiffs' Accuracy And Catch-All Claims Should Be
           Dismissed Because The Complaint Does Not Demonstrate
           That Plaintiffs' Suffered Actual Damages.................................... 25

CONCLUSION ............................................................................................. 26

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                            <u>Page(s)</u>

*Almeida-Sanchez v. United States,*
    413 U.S. 266 (1973) ..................................................................................14-15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................5, 19, 21

*Beier v. City of Lewiston,*
    354 F.3d 1058 (9th Cir. 2004) ...................................................................... 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................ 5

*Bibicheff v. Holder,*
    55 F. Supp. 3d 254 (E.D.N.Y. 2014) ............................................................ 18

*Cell Assocs. Inc. v. NIH,*
    579 F.2d 1155 (9th Cir. 1978) ...................................................................23-24

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................................ 6

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ......................................................................................7-9

*Daniels-Hall v. National Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) .......................................................................... 5

*Danks v. Zinke,*
    No. 1:17-CV-114, 2018 WL 8646658 (D.N.D. Nov. 27, 2018) ..................... 25

*Dittman v. California,*
    191 F.3d 1020 (9th Cir. 1999) ...................................................................... 23

*Doe v. Chao,*
    540 U.S. 614 (2004) ...................................................................................... 25

<u>Cases</u>, continued                                                    <u>Page(s)</u>

*FAA v. Cooper*,
        566 U.S. 284 (2012) ................................................................23, 25-26

*Fazaga v. FBI*,
        916 F.3d 1202 (9th Cir. 2019) ...............................................23-24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
        528 U.S. 167 (2000) ........................................................................ 7

*Garcia v. United States*,
        No. SACV091169DOCRNBX, 2011 WL 13224877
        (C.D. Cal. Sept. 19, 2011) ........................................................... 18

*Gordon v. Warren Consol. Bd. of Educ.*,
        706 F.2d 778 (6th Cir. 1983) ...................................................... 11

*Houlihan v. OPM*,
        909 F.2d 383, 384 (9th Cir. 1990) ............................................. 25

*House v. Bell*,
        547 U.S. 518 (2006) ........................................................................ 6

*Knievel v. ESPN*,
        393 F.3d 1068 (9th Cir. 2005) ...................................................... 5

*Lujan v. Defenders of Wildlife*,
        504 U.S. 555, 564 (1992) ............................................................... 7

*MacPherson v. IRS*,
        803 F.2d 479 (9th Cir. 1986) ...................................................... 24

*Mayfield v. United States*,
        599 F.3d 964 (9th Cir. 2010) .....................................................7-8

*McCarthy v. United States*,
        850 F.2d 558 (9th Cir.1988) .......................................................... 5

*Munns v. Kerry*,
        782 F.3d 402 (9th Cir. 2015) ........................................................ 8

<u>Cases, continued</u>                                                    <u>Page(s)</u>

*Ochoa v. McDonald's Corp.*,
 133 F. Supp. 3d 1228 (N.D. Cal. 2015).................................................. 6

*Or. Prescription Drug Monitoring Program v. DEA*,
 860 F.3d 1228 (9th Cir. 2017)................................................................. 7

*O'Shea v. Littleton*,
 414 U.S. 488 (1974) ................................................................................ 9

*Pollack v. DOJ*,
 49 F.3d 115 (4th Cir. 1995) ................................................................. 24

*Richardson v. Bd. of Governors of Fed. Reserve Sys.*,
 288 F. Supp. 3d 231 (D.D.C. 2018) .................................................... 25

*Savage v. Glendale Union High Sch.*,
 343 F.3d 1036 (9th Cir. 2003)................................................................ 5

*T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*,
 809 F.2d 626 (9th Cir. 1987)................................................................. 6

*Tabbaa v. Chertoff*,
 509 F.3d 89 (2d Cir. 2007) ..............................................................16-17

*Taleff v. Sw. Airlines Co.*,
 828 F. Supp. 2d 1118 (N.D. Cal. 2011) .............................................. 22

*U.S. v. Alfonso*,
 759 F.2d 728 (9th Cir. 1985) ............................................................... 15

*United States v. Aguilar*,
 883 F.2d 662 (9th Cir.1989) ................................................................ 20

*United States v. Arnold*,
 533 F.3d 1003 (9th Cir. 2008)..........................................................12, 16

*United States v. Barnett*,
 935 F.2d 178 (9th Cir. 1991) ............................................................... 15

Cases, continued                                                              Page(s)

*United States v. Black,*
    733 F.3d 294 (9th Cir. 2013) ................................................................. 11

*United States v. Braks,*
    842 F.2d 509 (1st Cir. 1988) ................................................................. 14

*United States v. Bravo,*
    295 F.3d 1002 (9th Cir. 2002) ......................................................... 16, 18

*United States v. Butler,*
    249 F.3d 1094 (9th Cir. 2001) ............................................................... 13

*United States v. Cano,*
    934 F.3d 1002 (9th Cir. 2019) ......................................................... 14, 17

*United States v. Chatman,*
    573 F.2d 565 (9th Cir. 1977) ................................................................. 20

*United States v. Cotterman,*
    709 F.3d 952 (9th Cir. 2013) ................................................................. 14

*United States v. Flores-Montano,*
    541 U.S. 149 (2004) .................................................................. 14, 16, 18

*United States v. Garcia-Quintana,*
    No. CR1908261001, 2020 WL 136290 (D. Ariz. Jan. 13, 2020) .................... 20

*United States v. Gonzalez-Torres,*
    309 F.3d 594 (9th Cir. 2002) ........................................................... 20-21

*United States v. Henry,*
    604 F .2d 908 (5th Cir. 1979) ................................................................ 16

*United States v. Ibarra,*
    978 F.2d 1266 (9th Cir. 1992) ......................................................... 10-11

*United States v. Irving,*
    452 F.3d 110 (2d Cir. 2006) ................................................................. 16

<u>Cases, continued</u>                                                   <u>Page(s)</u>

*United States v. Jerome-Oboh,*
    883 F. Supp. ..................................................................16, 18

*United States v. Koshnevis,*
    979 F.2d 691 (9th Cir. 1992).................................................. 15

*United States v. Mayer,*
    503 F.3d 740 (9th Cir. 2007)...............................................10-11

*United States v. Mohamud,*
    No. 3:10-CR-00475-KI-1, 2014 WL 2866749 (D. Or. June 24, 2014) .......... 10

*United States v. Montoya de Hernandez,*
    473 U.S. 531 (1985) ....................................................*passim*

*United States v. Nava,*
    363 F.3d 942 (9th Cir. 2004).................................................. 17

*United States v. Padilla-Noriega,*
    81 F. App'x 709 (9th Cir. 2003) ............................................. 17

*United States v. Ramsey,*
    431 U.S. 606 (1977) .......................................................14-15

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003).................................................. 11

*United States v. Seljan,*
    547 F.3d 993 (9th Cir. 2008).................................................. 18

*United States v. Sharpe,*
    470 U.S. 675 (1985) .......................................................... 16

*United States v. Smith,*
    940 F.2d 395 (9th Cir. 1991).................................................. 22

*United States v. Tsai,*
    282 F.3d 690 (9th Cir. 2002).................................................. 15

<u>Cases, continued</u>                                                      <u>Page(s)</u>

*United States v. Wilson,*
    7 F.3d 828 (9th Cir. 1993) ............................................................. 15

*Van Strum v. Lawn,*
    927 F.2d 612 (9th Cir. 1991) .......................................................... 11

*Welborn v. IRS,*
    218 F. Supp. 3d 64 (D.D.C. 2016) ................................................. 25

*Zurcher v. Stanford Daily,*
    436 U.S. 547 (1978) ......................................................................... 10

<u>Statutes</u>

5 U.S.C. § 552a ................................................................................... 1
5 U.S.C. § 552a(d)(1) ................................................................... 23-24
5 U.S.C. § 552a(d)(2) ..................................................................... 23
5 U.S.C. § 552a(d)(3) ..................................................................... 23
5 U.S.C. § 552a(e)(1) ...................................................................... 24
5 U.S.C. § 552a(e)(5) ...................................................................... 23
5 U.S.C. § 552a(e)(7) ................................................................... 23-24
5 U.S.C. § 552a(g)(1) ................................................................... 23-24
6 U.S.C. § 201 ............................................................................. 8, 10
6 U.S.C. § 202 ............................................................................. 8, 10
8 U.S.C. § 1324 ..................................................................... 2-3, 9, 20
8 U.S.C. § 1324(a)(1)(A)(ii) ........................................................... 20
19 U.S.C. § 1582 ............................................................................... 8
28 U.S.C. § 533 .............................................................................. 10
50 U.S.C. § 401 .............................................................................. 10
50 U.S.C. § 1801 ............................................................................ 10

<u>Rules</u>

Federal Rule of Civil Procedure 9(g) ............................................ 25
Federal Rule of Civil Procedure 12(b)(1) ............................... 1, 5, 9
Federal Rule of Civil Procedure 12(b)(6) ............................. *passim*
Federal Rule of Civil Procedure 56 ............................................ 1, 6
Local Rule 56.1 ................................................................................. 2

## **INTRODUCTION**

Defendants are federal law enforcement agencies and officials, including U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), and the Federal Bureau of Investigation ("FBI").  Plaintiffs challenge the lawful exercise of Defendants' broad law enforcement border security authority, via the allegations that Defendants engaged in a coordinated surveillance operation on journalists and activists, including themselves.  Defendants' law enforcement and border security operations, however, are lawful, and do not violate Plaintiffs' constitutional rights.  Plaintiffs also assert claims based on Defendants' past exercises of lawful authority at the border, including CBP's arrest of Ms. Adlerstein on May 5, 2019.  Those claims should be dismissed as well.  Insofar as Ms. Adlerstein's constitutional claims are based on her arrest, Defendants alternatively move for summary judgment, because that arrest was supported by probable cause.  Moreover, Plaintiffs lack standing for, and the Court may not properly grant, their requests for broad prospective injunctive relief regarding future activities and inspections at the border.  Nor have Plaintiffs' demonstrated that they are entitled to the extraordinary equitable remedy of expungement.  Finally, Plaintiffs' claims against CBP based on violations of the Privacy Act, 5 U.S.C. § 552a, for access to records should be dismissed because they are not ripe, and Plaintiffs' claims for damages under the Privacy Act should be dismissed because Plaintiffs have not sufficiently plead their actual, pecuniary damages.

## **BACKGROUND**

Plaintiffs allege that Defendants are jointly engaged in a months-long dragnet effort to surveil and seize activists, journalists, and legal workers at the border.[1]

---

[1]  This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56.  Defendants herein set forth the relevant facts, as alleged in the

Complaint ("Compl."), ¶¶ 26-32, ECF No. 1.  The Complaint alleges that, as part of this effort, Defendants created a "secret database," variously referred to in the Complaint as the "watchlist" and the "Operation Secure Line 'list'," of activists, including Mr. Valenzuela and Mr. Mensing.  *Id.* ¶¶ 28, 30, 65, 66, 108.  According to Plaintiffs, this database served as a list of people who Defendants thought "should be targeted for screening at the border" and for further scrutiny, such as associating international "alerts" designed to limit the ability of people on the list from traveling expeditiously.  *Id.* ¶ 30.  Plaintiffs aver that the database is jointly managed and accessed by Defendants.  *Id.*

The Complaint also incorporates by reference and relies upon statements made by Government officials concerning its operations at this time.  *See* Compl. ¶ 31.  Such materials include a letter dated May 9, 2019, from Randy J. Howe, the Executive Director of CBP's Office of Field Operations, which explains that

> CBP partnered with the Government of Mexico and other law enforcement agencies. CBP was also investigating possible violations under 8 U.S. Code § 1324, which pertains to any person who encourages or induces an alien to enter the United States, knowing or in reckless disregard that they are doing so in violation of law.  A number of journalists and photographers were identified by Mexican Federal Police as possibly assisting migrants in crossing the border illegally and/or as having some level of participation in the violent incursion events. Imperial Beach Border Patrol Station Agents were attacked multiple times by caravan groups on the border attempting to illegally cross.

Exhibit 1, Feb. 10, 2020 Declaration of C. Campbell ("Campbell Decl"), Attach. A at 1; Compl. ¶ 31.  The letter also notes that CBP's sources had identified "a number of people involved in assisting migrants in crossing the border illegally or having

---

Complaint, that Defendants accept as true for purposes of their motion to dismiss. Pursuant to Local Rule 56.1(a), Defendants will set forth in a separate statement of facts certain additional material facts as to which there can be no genuine dispute in support of their motion for partial summary judgment.

witnessed the violent actions taken against law enforcement at the border." *Id.* Consequently, "CBP followed through with appropriate investigatory queries" that were "standard law enforcement practice." *Id.* The letter also explained that "CBP does not target journalists for inspection based on their occupation or their reporting." *Id.*

Nevertheless, Plaintiffs allege that Defendants did target them for extra scrutiny at the border. Ms. Adlerstein contends that she was targeted because she accompanied migrants seeking asylum on three occasions. Compl. ¶¶ 33-36. According to Plaintiffs, a CBP officer arrested Ms. Adlerstein the fourth time she accompanied a migrant to the port, *Id.* ¶¶ 38-43, for violating 8 U.S.C. § 1324, which prohibits bringing in and harboring certain aliens. *Id.* ¶ 49. Ms. Adlerstein was detained for approximately four hours, and then released after officers obtained her contact information for a "deferred interview." *Id.* ¶ 55. Ms. Adlerstein also alleges that she had been referred to "secondary inspection" two of the three times she crossed the border following her arrest, and that she was delayed about 15 minutes each time. *Id.* ¶ 57. Ms. Adlerstein alleges that she has stopped accompanying migrants to the Lukeville port and cut her volunteer work in Mexico because of her arrest. *Id.* ¶¶ 58-59. Because of this, she avers that she chose not to create a clinic for migrants that she was planning on founding. *Id.* ¶¶ 60-61.

Mr. Valenzuela and Mr. Mensing allege that they were targeted by Defendants' intelligence operations. Specifically, they allege that they were included in the "Operation Secure Line list." *Id.* ¶ 66. They also allege, on information and belief, that "Defendants maintain dossiers" containing information about their "private First Amendment-protected information." *Id.* ¶ 67.

Mr. Valenzuela, who lives and volunteers in Mexico, alleges that he was targeted by border officials for extra scrutiny on six occasions in December 2018 and January 2019. Compl. ¶¶ 71-107. On the first occasion, which lasted approximately two-and-

a-half hours, he alleges he was examined by border officials and that his cell phone was examined manually. *Id.* ¶¶ 72-79. Mr. Valenzuela avers that, on the second occasion, he was referred to secondary inspection, shackled, detained in an interview room, and questioned by border officials. *Id.* ¶¶ 83-90. He also alleges that those officials conducted a manual search of his cell phone. *Id.* ¶¶ 91-92. In all, Mr. Valenzuela contends he was detained for approximately five hours total. *Id.* ¶ 93. He alleges he was detained and questioned four other times while crossing the border, none lasting more than 45 minutes. *Id.* ¶¶ 94-107. On the last occasion, Mr. Valenzuela avers that he was again shackled and detained in an interview room, but this time the alleged detention lasted about 25 minutes. *Id.* ¶¶ 104-05, 107. He avers that the officials took notes of his responses on notepads on two occasions. *Id.* ¶¶ 76, 84. Mr. Valenzuela alleges that he "dramatically cut his humanitarian activity" as the result of these six incidents and because he fears additional work would subject him to additional scrutiny while crossing the border. *Id.* ¶ 109.

Mr. Mensing, who also lives and volunteers in Mexico, alleges that he was targeted for extra scrutiny while crossing the border. Compl. ¶ 5, 16-17. Mr. Mensing alleges that he was referred to secondary inspection on twenty-six occasion between June 2018 and October 2019. *Id.* ¶ 5. He alleges that he was detained between two to three hours on two occasions, *id.* ¶¶ 125-26, 137, detained for 40 minutes or less on 14 occasions, *id.* ¶¶ 11, 121, 148, 152, and delayed for about 10 minutes on five occasions. *Id.* ¶ 154. Mr. Mensing alleges that, during these incidents, officials searched his belongings or pockets, *id.* ¶¶ 116, 124, 136, 148-49, 151-153, reviewed or examined papers or notes, *id.* ¶¶ 116, 124, 152, and questioned him, *id.* ¶¶ 116, 117-121, 125-26, 141-44, 148, 149, 150, 152. He avers that officials took notes during his inspection on one occasion. *Id.* ¶ 125. Mr. Mensing alleges that he fears that Defendants "will detain, arrest, search, and interrogate him every time he crosses into the United States" based on his repeated referrals to secondary inspection. *Id.* ¶ 155.

## APPLICABLE STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction may be made pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege sufficient facts to establish jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  In considering a Rule 12(b)(1) motion, the Court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988).

### II.    Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  In other words, while courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.  On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The court need not accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### III.   Federal Rule of Civil Procedure 56

Under Rule 56, summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing there is no material factual dispute, by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006) (Roberts, C.J., concurring).

## ARGUMENT

Defendants' move to dismiss all of Plaintiffs' constitutional claims. Additionally, Defendants move in the alternative for summary judgement on Ms. Adlerstein's Fourth Amendment claim based upon her arrest.  Defendants also seek partial dismissal of Plaintiffs' Privacy Act claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.   Plaintiffs' Constitutional Claims Fail.

Plaintiffs assert claims for violations of the guarantees of the First and Fourth Amendments.  These claims fail for three reasons.  First, the constitutional claims for which they seek prospective injunctive relief fail because Plaintiffs lack standing.

---

[2]  Rule 56 authorizes a court to grant "partial summary judgment" to dispose of less than the entire case and even just portions of a claim.  *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment; *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015).  Thus, a court can, "when warranted, selectively fillet a claim or defense without dismissing it entirely."  *Id.*

Second, because Plaintiffs' First Amendment claims are not supported as a matter of law, such claims should be dismissed.  Third, Plaintiffs' Fourth Amendment claims should be dismissed pursuant to Rule 12(b)(6), and with regard to Ms. Adlerstein's Fourth Amendment claim based on her May 5, 2019 arrest, the Court should, in the alternative, grant summary judgment in Defendants' favor.

### A.   Plaintiffs Lack Standing To Seek Prospective Injunctive Relief.

Plaintiffs lack standing to seek a prospective injunctive relief enjoining Defendants from investigating or surveilling them, and from screenings them at the border.  Plaintiffs do not seek damages for these alleged violations, requesting only expungement of records and prospective injunctive relief.[3]   A plaintiff seeking injunctive relief must demonstrate that the threatened injury is certainly impending. *Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1235 (9th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  Allegations of possible future harm are not sufficient to constitute an injury in fact. *Id.*  Moreover, "[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects.  Nor does speculation or 'subjective apprehension' about future harm support standing." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992), and quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000)).  "Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a 'real or immediate

---

[3] Specifically, Plaintiffs seek, in part, an order enjoining Defendants from conducting "suspicionless detentions, arrests, interrogations, and physical restraints of Plaintiffs at the border for purposes unrelated to the border search exception to the Fourth Amendment," as well as an order directing Defendants to "cease investigations into and surveillance, detention, and interrogation of Plaintiffs based on their First Amendment-protected activity without suspicion or evidence of criminal activity." Compl. ¶ 176a, d.

threat . . . that he will again be wronged in a similar way.' " *Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015) (quoting *Mayfield*, 599 F.3d at 970)  (omission in original).

Here, Plaintiffs have not shown that they will be subjected to a concrete and particularized harm in the future.  Mr. Valenzuela contends that he "dramatically cut his humanitarian activity" because he fears additional work would subject him to additional scrutiny while crossing the border.  Compl. ¶ 109.  But a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Nor does 'subjective apprehension' suffice. *Munns*, 782 F.3d at 411.

Mr. Mensing alleges that he fears that Defendants "will detain, arrest, search, and interrogate him" every time he crosses the border based on his repeated referrals to secondary inspection.  Compl. ¶ 155.  But Mr. Mensing's fear is, like Mr. Valenzula's, merely speculative and hypothetical, because every person travelling into and out of the United States is subject to search and inspection.  As explained below, Defendants are provided broad powers under federal law enforcement authorities, *see* 6 U.S.C. §§ 202, 211, and broad authority to enforce the customs and immigration laws.  Indeed, the Government's authority to examine individuals and search during border crossings is plenary, extending to all persons entering the United States, including United States citizens.  Officials may conduct searches and inspections, without seriously invading a person's privacy, of a traveler exiting or entering the United States without reasonable suspicion, probable cause, or a warrant.  *See* 19 U.S.C. § 1582.  Consequently, even if Mr. Mensing was subject to surveillance and screening at the border in the future, he could not establish that such actions would violate the First or Fourth Amendments.

Ms. Adlerstein also has not demonstrated that she is threatened with a concrete and particularized legal harm that is "real and immediate" and likely to occur again in the future.  Ms. Adlerstein's claimed injury rests on her fear of being arrested again.

*See* Compl. ¶ 61.  This allegation is, however, speculative and hypothetical, and is not a concrete and particularized legal harm.  *Clapper*, 568 U.S. at 416.  Moreover, the officer who arrested Ms. Adlerstein on Mary 5, 2019, did so because he observed Ms. Adlerstein assisting an individual crossing the border who lacked the proper legal documentation, which is a violation of 8 USC § 1324.  Feb. 10, 2020 Declaration of M. Williams ("Williams Decl."), ¶¶ 3-5, ECF No. 17-1.  Accordingly, Ms. Adlerstein's speculative fear of a future wrongful arrest is baseless.  *Cf. O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (noting that, for standing purposes, courts assume that individuals "will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct.").

Plaintiffs' prospective claims are hypothetical and speculative, and therefore fail to demonstrate standing.  Plaintiffs' constitutional claims seeking prospective relief should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

**B.    Plaintiffs' First Amendment Claims Should Be Dismissed.**

Even if Plaintiffs could establish standing to seek prospective relief, there would be no basis to grant it.  Plaintiffs raise two separate arguments concerning a violation of the First Amendment.  First, Plaintiffs argue that the collection of information about Mr. Valenzuela and Mr. Mensing violates the First Amendment because the Government lacked suspicion that these individuals were engaging in criminal activity.  Second, Plaintiffs allege that the arrest of Ms. Adlerstein ran afoul of the First Amendment because it was premised on her allegedly proper associations with migrants.  Both such arguments lack support in the law and should be rejected.

As an initial matter, constitutional claims concerning the lawfulness of investigations and seizures are properly considered under the rubric of the Fourth Amendment, not the First.  As the Ninth Circuit has reiterated, "the *Fourth Amendment* provides the relevant benchmark. . . .  First Amendment concerns become part of the

Fourth Amendment analysis because, under the Fourth Amendment, the court must 'examine what is 'unreasonable' in the light of the values of freedom of expression.'" *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007). This holding is in turn founded on *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978), which held that, "where materials sought to be seized may be protected by the First Amendment," the law requires simply that the requirements of the Fourth Amendment be applied. Accordingly, the question of whether certain plaintiffs were lawfully investigated or detained, as they allege, must be analyzed under the Fourth Amendment. *See also United States v. Mohamud*, No. 3:10-CR-00475-KI-1, 2014 WL 2866749, at *11–12 (D. Or. June 24, 2014) (holding, with regard to claims of an unconstitutional surveillance program, that "the appropriate analysis is under the Fourth Amendment, not the First Amendment"). Thus, when correctly framed, Plaintiffs' first allegation challenges the broad investigatory powers of federal law enforcement authorities under the Fourth Amendment.

It cannot be disputed that that CBP and ICE are empowered to investigate a wide range of illegal activities at the border, including but not limited to, child pornography possession and distribution, human rights violations, drug smuggling, weapons trafficking, financial and trade-related crimes, immigration violations, customs requirements, as well as laws relating to national security and terrorism. *See* 6 U.S.C. §§ 202, 211. The FBI is similar empowered to investigate a wide range of illegal activities and threats to national security. *See, e.g.*, 28 U.S.C. § 533, 50 U.S.C. § 401 *et seq.*; 50 U.S.C. § 1801 *et seq.* Yet Plaintiffs contend that Defendants were barred from collecting information related to Mr. Valenzuela and Mr. Mensing, as a component of Defendants" law enforcement mission, absent "suspicion that these Plaintiffs had engaged in any criminal activity[.]" Compl. ¶ 165. Not so.

It is well-established that "the government is not required to reasonably suspect an individual of wrongdoing before targeting that individual for investigation." *United*

*States v. Ibarra*, 978 F.2d 1266 (9th Cir. 1992); *see also United States v. Black*, 733 F.3d 294, 304 (9th Cir. 2013) ("The government need not have individualized suspicion of a defendant's wrongdoing before conducting an undercover investigation."); *Mayer*, 503 F.3d at 749-50 (rejecting claim of a "reasonable suspicion standard for investigations that present a risk of interfering with an organization's First Amendment rights."). To hold otherwise would put the cart before the horse, requiring the Government to develop evidence of criminal activity even *before* it was permitted to investigate such activity. As the Ninth Circuit explained, "an investigation threatening First Amendment rights, *like any government investigation*, [should] be justified by a legitimate law enforcement purpose that outweighs any harm to First Amendment interests." *Mayer*, 503 F.3d at 753.

As noted above, the investigation at issue here was predicated upon multiple legitimate law enforcement purposes, including investigatory efforts regarding "assisting migrants in crossing the border illegally" and "participation in [certain] violent incursion events." Exhibit 1, Campbell Decl. Attach. A at 1.[4] And such legitimate investigations clearly outweighed any harm to First Amendment interests. Indeed, Mr. Valenzuela and Mr. Mensing do not allege that any border searches or detentions violated their First Amendment rights, only that Defendants' purported surveillance violated the First Amendment. But Plaintiffs allege no facts which would establish that Defendants' information collection, standing alone, could somehow harm any First Amendment interests, nor could they. *See Van Strum v. Lawn*, 927 F.2d 612 (9th Cir. 1991) ("[P]laintiffs may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives."); *Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778, 781 (6th Cir. 1983) (holding that the plaintiffs'

---

[4] Because the Complaint incorporates by reference the letter from CBP explaining its investigatory efforts, the Court may consider the letter on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"subjective fear" about misuse of information collected pursuant to a law enforcement operation "is insufficient to establish a First Amendment claim").[5]

Plaintiffs' only other First Amendment argument asserts that Ms. Adlerstein was wrongfully arrested because her arrest was premised only on her "lawful" associations with migrants. Compl. ¶ 166. This contention simply restates Ms. Adlerstein's assertion of an unlawful arrest under the Fourth Amendment (which is addressed in Part I.C.2., *infra*). *See* Compl. ¶ 158 (asserting that Defendants "unlawfully and without legal justification" effected a seizure of Ms. Adlerstein). As noted above, claims regarding the propriety of an investigation or seizure are properly construed under the Fourth Amendment, not the First. Indeed, in the specific context of border searches and seizures, the Ninth Circuit explicitly rejected the claim that the First Amendment provides additional and separate protections apart from those provided in the Fourth Amendment, because the Supreme Court "has refus[ed] to subject government action to greater scrutiny with respect to the Fourth Amendment when an alleged First Amendment interest is also at stake." *United States v. Arnold*, 533 F.3d 1003, 1010 (9th Cir. 2008). Thus, the question of whether Ms. Adlerstein was properly arrested at the border is governed by the Fourth Amendment analysis, which, for the reasons as set forth below, requires judgment for Defendants or dismissal.

---

[5] Plaintiffs' hypothetical, subjective fear is also without merit, because the Department of Homeland Security has directed its components, including CBP and ICE, not to collect or maintain records describing a person's First Amendment-protected activities unless that person consents, the record is expressly authorized by statute, or the information contained in the record is relevant to a criminal, civil, or administrative proceeding or activity. *See* Kevin K. McAleenan, Information Regarding First Amendment Protected Activities, *available at* https://www.dhs.gov/sites/default/files/publications/info_regarding_first_amendment_protected_activities_as1_signed_05.17.2019.pdf (May 17, 2019).

**C.      Plaintiffs' Fourth Amendment Claims Fail.**

Plaintiffs claim that Defendants' border enforcement activities violated the guarantees of the Fourth Amendment because the border searches, inspections, and detentions[6] were motivated by an interest in criminal investigations. Plaintiffs' claims are not supported in law and should be dismissed. In addition, to the extent Ms. Adlerstein asserts a Fourth Amendment based on her May 5, 2019 arrest, the Court should, in the alternative, grant summary judgment to Defendants on Ms. Adlerstein's claim. Finally, the Court should dismiss Plaintiffs' requests for expungement, because the Complaint does not demonstrate that they are entitled to this extraordinary equitable remedy.

**1.      The Court Should Dismiss Plaintiffs' Fourth Amendment Claims Based On Border Enforcement Activities.**

Plaintiffs rest their Fourth Amendment claims on two theories. First, Plaintiffs contend that Defendants may not examine or search persons crossing the nation's border if the inspection is motivated by a criminal investigation. This is not so. The Government has broad, well established authority to conduct searches and inspections at the nation's borders without probable cause or warrant. Second, Plaintiffs contend that they were subjected to intrusive searches that required (but did not warrant) reasonable suspicion, such that they can seek injunctive relief against such searches in the future. They cannot. Setting aside their lack of "certainly impending" future injury, none of the alleged facts and circumstances of the past personal searches in the Complaint were so intrusive as to require reasonable suspicion.

---

[6] Defendants use the term "detention" to refer to the stop, search, and inspection of individuals at the border. Generally, a brief detention at the border by officials of persons presenting themselves for admission to the United States is not custody for *Miranda* purposes, even though such persons are not free to leave or to refuse to be searched. *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001).

a.    **The Authority Governing Suspicionless Searches At Our Nation's Border Is Well-Established.**

Plaintiffs' first theory is contrary to the well-established law governing the Government's plenary authority to search and examine persons crossing our nation's border without suspicion or warrant. The United States, as sovereign, has the inherent authority to protect, as well as a paramount interest in protecting, its territorial integrity. *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). "Since the beginning of our Government," Congress has granted the Executive "plenary authority to conduct routine searches and seizures the border, without probable cause or warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *Id.* at 152 (2004) (quoting *Montoya de Hernandez*, 473 U.S. 531, 537 (1985)); *see also United States v. Ramsey*, 431 U.S. 606, 616-617 (1977). The "Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border," *Flores-Montano*, 541 U.S. at 152.

For this reason, "searches of persons or packages at the national border rest on different considerations and different rules of constitutional law from domestic regulations." *Ramsey*, 431 U.S. at 618-19. The Government may search the "persons and effects of entrants . . . [at international borders without being] subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538; *see also United States v. Braks*, 842 F.2d 509, 511 (1st Cir. 1988). This principle—the border search exception—is a "'historically recognized exception to the Fourth Amendment's general principle that a warrant be obtained.'" *United States v. Cotterman*, 709 F.3d 952, 957 (9th Cir. 2013) (en banc) (quoting *Ramsey*, 431 U.S. at 621). Indeed, "border searches typically do not require any particularized suspicion, so long as they are 'routine inspections and searches of individuals or conveyances seeking to cross our borders.'" *United States v. Cano*, 934 F.3d 1002, 1012 (9th Cir. 2019) (quoting *Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973)). In

14

other words, border searches are "reasonable simply by virtue of the fact they occur at the border." *Id.* (quoting *Ramsey*, 431 U.S. at 616). The United States thus has plenary authority to conduct routine searches and seizures at the border without any suspicion to justify the stop. *Montoya de Hernandez*, 473 U.S. at 538.

Consequently, Plaintiffs' first theory fails as a matter of law because officials may examine and search persons crossing the border for any reason or no reason at all. The subjective motivation of officers is not relevant. *See United States v. Tsai*, 282 F.3d 690, 694 (9th Cir. 2002) (holding that, as a general matter, an official's "subjective motivation for the search" does not "impose a warrant requirement that ordinarily does not exist at the border"); *United States v. Koshnevis*, 979 F.2d 691, 694 (9th Cir. 1992) (noting the irrelevance of "the subjective purpose of the agent making referrals to secondary inspection, unless there is some objective evidence supporting the charge of pretext" (citing *United States v. Barnett*, 935 F.2d 178, 181 (9th Cir. 1991))); *United States v. Wilson*, 7 F.3d 828, 833 (9th Cir. 1993) (same). Moreover, the fact that several law enforcement agencies may have worked together during an investigation does not turn a border search into one that requires suspicion. *Cf. U.S. v. Alfonso*, 759 F.2d 728, 735 (9th Cir. 1985) (holding that a search conducted by law enforcement agents other than Customs agents was nonetheless authorized by 19 U.S.C. § 482 because the search was supervised by Customs agents).

### b.    Plaintiffs' Fourth Amendment Claims That The Border Searches Violated The Fourth Amendment Should Be Dismissed.

Plaintiffs' second theory is based on the searches and inspections that allegedly occurred when they crossed the border. But the border searches and inspections alleged in the complaint were lawful. None of the alleged facts and circumstances of the past personal searches in the Complaint were so intrusive as to require reasonable suspicion.

Customs officials may conduct suspicionless searches and inspections at the border for any reason so long as the searches are considered "routine." *Tabbaa v. Chertoff*, 509 F.3d 89, 98 (2d Cir. 2007) (citing *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006)). While the line between "routine" and "non-routine" searches is not clearly defined, courts have held that "routine" searches include "searches of outer clothing, luggage, a purse, wallet, pockets, or shoes which, unlike strip searches, do not substantially infringe on a traveler's privacy rights." *Id.* (citation omitted). More invasive searches, such as strip, body cavity, or involuntary x-ray searches, require reasonable suspicion. *Arnold*, 533 F.3d at 1007 (citing *Montoya de Hernandez*, 473 U.S. at 451 n.4). The key factor is the intrusiveness of the search. *Id.*

Ms. Adlerstein bases her claims on the allegation that she was referred to "secondary inspection" on two occasions, resulting in about a 15-minute delay each time. Compl. ¶ 57. But border inspections and searches of personal effects and vehicles are plainly routine and require no suspicion at all under the law. *United States v. Bravo*, 295 F.3d 1002, 1008 (9th Cir. 2002) ("Detention and questioning during routine searches at the border are considered reasonable within the meaning of the Fourth Amendment."). The fact that Ms. Adlerstein may have been referred to secondary inspection does not alter the outcome. In fact, the "referral of a person entering this country to a secondary inspection is part of the 'routine' border interrogation." *United States v. Jerome-Oboh*, 883 F. Supp. 917, 922 (W.D.N.Y. 1995) (quoting *United States v. Henry*, 604 F .2d 908, 920 (5th Cir. 1979)). And the mere fact that Plaintiffs were delayed or inconvenienced at an international border is likewise of no constitutional significance. *Flores-Montano*, 541 U.S. at 154. The Supreme Court has "consistently rejected hard-and-fast time limits" for border searches. *Montoya de Hernandez*, 473 U.S. at 543 (citing *United States v. Sharpe*, 470 U.S. 675, 685 (1985). Nevertheless, in *United States v. Flores-Montano*, the Court held that a one-hour delay

16

incident to a border search did not render that search "non-routine" because "delays of one to two hours at international borders are to be expected." 541 U.S. at 155 n.3.

Mr. Valenzuela rests his claims on allegations that he was subject to inspection or searches on six occasions in December 2018 and January 2019. Compl. ¶¶ 71-107. He contends officials conducted manual searches of his cell phone. Compl. ¶¶ 72-79, 91-92. However, manual searches of cell phones at the border are reasonable without individualized suspicion. *Cano*, 934 F.3d at 1016. Mr. Valenzuela also alleges that he was handcuffed, shackled, and detained in an interview room on two occasions. Compl. ¶¶ 72-79, 104-105. But handcuffing an individual or detaining them in a security office during a border search does not violate the Fourth Amendment. In *United States v. Nava*, 363 F.3d 942 (9th Cir. 2004), the Ninth Circuit held in an appeal from denial of a criminal suppression motion that a lengthy border detention was a legal detention, and not an arrest. The court held that a defendant's "being asked to leave his truck, being handcuffed and told it was for safety reasons, being escorted in handcuffs to the security office, having had a pat down search conducted, and being forced to wait in the locked security office while his truck was searched did not constitute an arrest under the Fourth Amendment." *Id.* at 946. Instead, it was a legal, reasonable border detention. *Id.* at 945-46.

Mr. Valenzuela was delayed less than an hour on all but two of these detentions. On those two occasions, he alleges that he was detained for two-and-a-half hours and five hours. Compl. ¶¶ 79, 93. While the Supreme Court has "consistently rejected hard-and-fast time limits," *Montoya de Hernandez*, 473 U.S. at 543, courts have found border searches resulting in delays of two-, four-, and six-hours to be reasonable detentions that did not require reasonable suspicion. *See Tabbaa*, 509 F.3d at 100-01 (a six-hour delay did not rise to "an unexpected level of intrusion into a person's privacy . . . that by itself would render the searches non-routine."); *United States v. Padilla-Noriega*, 81 F. App'x 709, 711 (9th Cir. 2003) (two-hour delay before canine

17

search of car at border); *Bibicheff v. Holder*, 55 F. Supp. 3d 254, 264 (E.D.N.Y. 2014) (three referrals to secondary, lasting 30-40 minutes, 2 hours, and 3 hours, were reasonable, routine border searches, even if considered cumulatively); *Garcia v. United States*, No. SACV091169DOCRNBX, 2011 WL 13224877, at *8 (C.D. Cal. Sept. 19, 2011) (four-hour detention by Customs officers at airport).  So too here.  Both Mr. Valenzuela's detentions consisted of waiting for officers, detailed questioning, and the manual search of his cell phones at a busy border crossing.  Compl. ¶¶ 71-77, 80-92. The alleged delays are reasonable in these circumstances.

Mr. Mensing bases his claims on allegations that he was detained for questioning during 26 of the 28 times he entered the United States from Mexico between June 2018 and October 2019.  Compl. ¶ 114.  On 23 of these occasions, the alleged detention consisted of being referred to a secondary inspection, questions by an official, and delayed no more than 40 minutes.  *Id.* ¶ 115-116 (10 occasions), 121 (Nov. 11, 2018), 138-44 (Jan. 11, 2019); 145-146 (Jan. 18, 2018); (10 occasions after Sept. 2019).[7]  All of these activities are, however, part of routine border detentions. *See Flores-Montano*, 541 U.S. at 155 n.3 (delays of one to two hours at the border "are to be expected"); *Bravo*, 295 F.3d at 1008 (questioning is part of routine border detention); *Jerome-Oboh*, 883 F. Supp. at 922 (referral to secondary is part of routine border detention).  And, although Mr. Mensing asserts officials also reviewed his notes and papers on occasion, Compl. ¶ 116, 152, this too does is not a violation of the Fourth Amendment because it occurred at the border when Plaintiff sought to reenter the United States.  *See United States v. Seljan*, 547 F.3d 993, 1002 (9th Cir. 2008) (denying challenge to border search of Federal Express package, which included reading of personal correspondence).  While Mr. Mensing also contends that he was detained for two-and-a-half hours on December 3, 2018, the length of that delay was reasonable,

---

[7]  The Complaint contains detailed allegations of only 25 of the 28 alleged detentions.

especially in view of fact that he was crossing the border on foot at 1:30 a.m.  *See* Compl. ¶ 123.  So too for his alleged detention just before Christmas.  *See* Compl. ¶ 127-137.  Upon entering the United States, Mr. Mensing was allegedly waited about 45 minutes until two agents were available to question him.  Compl. ¶ 128.  The agents then questioned Mr. Mensing, searched his belongings, and released him.  Compl. ¶¶ 127-36.  Mr. Mensing was delayed, in total, between two and three hours.  Compl. ¶ 137.  None of these allegations give rise to a constructional injury—a two- to three-hour delay is to be expected during holiday travels.  In sum, each of Ms. Mensing's alleged detentions were lawful, reasonable border detentions.[8]

For these reasons, the Court should dismiss Plaintiffs' claims that their past searches and inspections at the border violated the Fourth Amendment, and that they therefore are entitled to expungement and prospective injunctive relief to prevent hypothetical future inspections at the border.

> **2.    The Court Should Dismiss The Fourth Amendment Claim Based On Ms. Adlerstein's Arrest Or, In The Alternative, Grant Defendants Summary Judgment.**

The Court should dismiss or, in the alternative, grant summary judgment in favor of Defendants on Ms. Adlerstein's Fourth Amendment claim insofar as that claim is based upon her arrest on May 5, 2019.  As with Plaintiffs' other claims, this claim is subject to dismissal because Ms. Alderstein has no basis to speculate that she will be subject to an arrest in similar circumstances in the future, and therefor lacks

---

[8] Furthermore, the Complaint contains only bare assertions and conclusory allegations that the FBI seized Plaintiffs.  *See* Compl. ¶ 30 (alleging that all defendant agencies, through coordination in surveillance activities, "seized" Plaintiffs).  But "bare assertions, . . . [which] amount to nothing more than a 'formulaic recitation of the elements' of a . . . claim," are "not entitled to the assumption of truth" and do not survive a motion to dismiss.  *Iqbal*, 556 U.S. at 681.  Plaintiffs' Fourth Amendment claims against the FBI and Christopher Wray therefore should be dismissed.

standing.   Even if she could, her claim would fail because, in effecting her arrest, Defendants did not violate Ms. Adlerstein's rights under the Fourth Amendment (and therefore would not do so were the events to be repeated).[9]

Probable cause existed for Ms. Adlerstein's arrest.   An officer may arrest a suspect if "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) (internal alteration marks and citation omitted).   This includes consideration of "the nature and trustworthiness of the evidence of criminal conduct available to the police." *Id.* at 1064.   The officer need not know precisely what offense has been committed.   *See United States v. Chatman*, 573 F.2d 565, 567 (9th Cir. 1977) (per curiam) (finding probable cause where officers believed only that the defendant was "clandestinely engaging in illegal business of some kind").

The Complaint does not allege sufficient factual allegations that show the arresting officer could not have had probable cause for Ms. Adlerstein's arrest.   She attempted to bring to the United States a person who did not possess proper documentation, in violation of 8 U.S.C. § 1324.[10]   Compl. ¶¶ 40-43, 49; Statement of

---

[9]  Ms. Adlerstein does not allege any facts demonstrating that the FBI or ICE were involved in her arrest, and the undisputed material facts demonstrate that the arresting officer was employed by CBP.   *See* Compl. ¶¶ 38-55; Statement of Facts ("SOF") ¶¶ 1-8.   FBI, Wray, ICE, and Albence are therefore entitled to summary judgment.

[10] To find probable cause, the arresting officer must determine that (1) an alien entered or remained in the United States in violation of the law, (2) Ms. Adlerstein accompanied or escorted the alien to the United States with intent to further the alien's unlawful presence, and (3) Ms. Adlerstein knew or recklessly disregarded the fact that the alien was in the country in violation of the law.   8 U.S.C. § 1324(a)(1)(A)(ii); *see also United States v. Garcia-Quintana*, No. CR1908261001, 2020 WL 136290, at *1 (D. Ariz. Jan. 13, 2020); *United States v. Aguilar*, 883 F.2d 662, 683-84 (9th Cir.1989) (upholding a "brings into" conviction in which the defendant procured false papers for the 13-

Fact (SOF) ¶ 1.  Ms. Adlerstein admits that she escorted an alien to the United States. Compl. ¶¶ 38, 40-41.  And the Complaint is devoid of factual allegations that the alien presented herself with documents entitling her to enter the United States, or otherwise suggesting that the officer misconstrued the applicable law in finding probable cause. Without such allegations, her claim fails to demonstrate entitlement to relief, even if the pleaded facts were assumed to be true.  *Iqbal*, 556 U.S. at 680-81.  Her claim must therefore be dismissed.

But even if Ms. Adlerstein had sufficiently stated this claim, which she did not, the undisputed facts demonstrate probable cause existed.  Once Ms. Adlerstein crossed the international border, she was questioned by a CBP officer.  SOF ¶ 4. The officer asked Ms. Adlerstein why she was attempting to cross a person into the United States who did not have proper documentation.  *Id.*  Ms. Adlerstein responded that is what she does.  SOF ¶ 4.  The officer then informed Ms. Adlerstein that it was against the law to bring an undocumented person into the United States.  SOF ¶ 6.  In response, she said that she wasn't doing anything wrong.  *Id.*  Based on Ms. Adlerstein's statements, the officer arrested her.[11]  SOF ¶ 7.  There was sufficient probable cause for the arrest.

The Court should therefore dismiss, or in the alternative, grant summary judgment on Ms. Adlerstein's Fourth Amendment claim based on her arrest requesting expungement and prospective injunctive relief.

---

year-old alien, coached her to lie to immigration authorities, walked ahead of her through immigration, and met up with her immediately thereafter), *superseded by statute on other grounds as stated in United States v. Gonzalez-Torres*, 309 F.3d 594,599 (9th Cir. 2002).

[11] Although Ms. Adlerstein was fingerprinted, she has no grounds to argue that fingerprinting requires reasonable suspicion, or presents any other constitutional violation.

### D. Plaintiffs' Claims Seeking Expungement Should Be Dismissed.

Even if Plaintiffs' constitutional claims did not fail on their merits, the Court should still dismiss Plaintiffs' claims seeking the expungement of records because Plaintiffs have not alleged facts sufficient to demonstrate that they are entitled to equitable relief. *See, e.g., Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011), *aff'd*, 554 F. App'x 598 (9th Cir. 2014) (dismissing a request for "the extreme remedy of divestiture" under the Clayton Act pursuant to Rule 12(b)(6)). Expungement is a narrow equitable remedy for constitutional violations that courts may order only in "extreme circumstances." *United States v. Smith*, 940 F.2d 395 (9th Cir. 1991). As demonstrated above, none the violations alleged by Plaintiffs support their First or Fourth Amendment claims. Thus, Plaintiffs' have shown no basis for expungement. *Id.* at 396. But even assuming Plaintiffs have alleged a possible constitutional violation, the allegations are not so extraordinary to form a proper basis for expungement of Defendants' law enforcement records. *See id.* To properly plead a basis for this relief, Plaintiffs' must allege an extraordinary harm that outweighs the Government's interest in maintaining law enforcement records, not just the "natural and intended collateral consequences" of having been detained or arrested. *See id.* Plaintiffs' have not done so here and, as such, their request for expungement should be dismissed.

## II. Plaintiffs' Privacy Act Access Claims Against CBP And Their Accuracy And Catch-All Claims Should Be Dismissed.

Plaintiffs also fail to allege sufficient support for some of their claims under the Privacy Act, which should be dismissed pursuant to Rule 12(b)(6). As explained below, Plaintiffs assert four types of Privacy Act claims: access claims; amendment claims; accuracy claims; and catch-all claims. Plaintiffs' access claims against CBP should be dismissed because they are not ripe. The Complaint also does not contain factual allegations sufficient to support the conclusion that Plaintiffs have suffered

actual damages as a result of an alleged Privacy Act violation.  Plaintiffs' accuracy and catch-all claims should be dismiss for this reason.

### A.        The Legal Framework Of The Privacy Act Of 1974.

The Privacy Act "contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies." *FAA v. Cooper*, 566 U.S. 284, 287 (2012).  The Act allows individuals to make a written requests for records maintained by government agencies, 5 U.S.C. § 552a(d)(1) ("Section 552a(d)(1)"), written requests to amend records maintained by agencies, 5 U.S.C. § 552a(d)(2) ("Section 552a(d)(2)"), and requests for further review of an agency's refusal to amend such records, 5 U.S.C. § 552a(d)(2) ("Section 552a(d)(3)"). The Act also requires agencies to maintain accurate information within those records, 5 U.S.C. § 552a(e)(5) ("Section 552a(e)(5)"), and prohibits agencies from maintaining records describing how an individual exercises their rights guaranteed by the First Amendment unless expressly authorized or the record is pertinent to an authorized law enforcement activity.  5 U.S.C. § 552a(e)(7) ("Section 552a(e)(7)").

The Privacy Act's civil remedies provision authorizes an individual to bring four categories of claims against federal agencies only,[12] based on the particular statutory provision violated by the agency.  *Id.* § 552a(g)(1) (A)-(D).  A violation of Section 552a(d)(1) is actionable under 5 U.SC. § 552a(g)(1)(B) (an "access claim").  A violation of Section 552a(d)(3) is actionable under 5 U.SC. § 552a(g)(1)(A) (an "amendment claim").[13]   A violation of Section 552a(e)(5) is actionable pursuant to 5 U.S.C.

---

[12]   For this reason, Plaintiffs' claims against the individual Defendants must be dismissed.  *See Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999).

[13]   Under the Privacy Act, Plaintiffs' requests for an order directing the expungement of records may only be brought as an amendment claim.  *See Cell Assocs. Inc. v. NIH*, 579 F.2d 1155, 1161 (9th Cir. 1978).  The Privacy Act limits the remedies available for access and amendment claims to injunctive relief only, and limits the remedies

§ 552a(g)(1)(C) (an "accuracy claim"), and other violations are actionable under the "catch-all" provision, 5 U.S.C. § 552a(g)(1)(D) (a "catch-all claim"),[14] if the violation has an adverse effect on an individual that caused actual damages.

**B.    Plaintiffs' Access Claims Against CBP Are Not Ripe And Should Therefore Be Dismissed.**

Plaintiffs' access claims against CBP are not ripe.  To properly allege an access claim, a plaintiff must show: (1) a request for records contained in a system of records was made; (2) the request was denied; and (3) such denial or failure to act was improper under the Privacy Act.  *See* 5 U.S.C. §§ 552a(d)(1), (g)(1)(B), (g)(3)(A).  Here, Plaintiffs do not allege their requests for access to records have been denied.  Instead, Plaintiffs rely on allegations that Defendants have not responded to their Privacy Act request.  Compl. ¶¶ 171-174.  An agency's failure to respond to a Privacy Act request does not, however, satisfy the requirement that the agency deny a request for records.  *See Pollack v. DOJ*, 49 F.3d 115, 116 n.1, 118 (4th Cir. 1995).  Furthermore, Plaintiffs cannot allege that CBP has denied their requests for access to records because CBP has not, in fact, responded to their requests.  *See* Exhibit 2, Feb. 7, 2020 Declaration of D. Danisek ¶¶ 2-5.[15]

For this reason, Plaintiffs' access claims against CBP should be dismissed.

---

available for accuracy and catch-all claims to an individual's actual damages.  *Id.*; *see also Fazaga v. FBI*, 916 F.3d 1202, 1249 (9th Cir. 2019).

[14]   Although Plaintiffs purport to assert a claim based on a violation of Section 552a(e)(1) (records irrelevant to agency purpose), that claim is derivative of Plaintiffs' catch-all claims based on Section 552a(e)(7) and thus will succeed or fail with the catch-all claims based on Section 552a(e)(7).  *See, e.g.*, *MacPherson v. IRS*, 803 F.2d 479, 480 n.1 (9th Cir. 1986).

[15]   ICE and the FBI have responded to Plaintiffs' requests for access to records pursuant to the Privacy Act.

**C.    Plaintiffs' Accuracy And Catch-All Claims Should Be Dismissed Because The Complaint Does Not Demonstrate That Plaintiffs' Suffered Actual Damages.**

The Court should also dismiss Plaintiffs' accuracy and catch-all claims because the Complaint does not contain factual allegations that show that Plaintiffs suffered actual damages caused by the alleged Privacy Act violations. "[A]ctual damages" are a required element of Privacy Act accuracy and catch-all claims. *Doe v. Chao*, 540 U.S. 614, 617-18, 627 (2004). Actual damages are "limited to proven pecuniary or economic harm," like special damages for common-law torts, "which must be specially pleaded." *Cooper*, 566 U.S. at 297, 299 (2012); *see also Welborn v. IRS*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016) (noting a plaintiff "must specifically allege that they have suffered calculable damages to survive" a motion to dismiss); *see also* Fed. R. Civ. P. 9(g). Conclusory statements of non-quantifiable harm do not suffice to demonstrate actual damages. *Welborn*, 218 F. Supp. 3d at 82.

Here, Plaintiffs do not specifically allege facts that demonstrate they had suffered actual, pecuniary loss as a result of the agencies' alleged violations of the Privacy Act. Ms. Adlerstein avers that, following her arrest, she was prevented from "creating an asylum clinic" based in Mexico, for which she "planned on becoming a program director." Compl. ¶¶ 60-61. But this is speculation about potential future harm—the clinic admittedly was not in existence, and there are no allegations that the position Ms. Adlerstein hoped to create for herself was paid. Such hypothetical future harm does not support a claim under the Privacy Act. *See Danks v. Zinke*, No. 1:17-CV-114, 2018 WL 8646658, at *3 (D.N.D. Nov. 27, 2018) (citing *Richardson v. Bd. of Governors of Fed. Reserve Sys.*, 288 F. Supp. 3d 231, 237 (D.D.C. 2018)). Further, Ms. Adlerstein's alleged harm is linked to her arrest, not the agencies' alleged violation of the Privacy Act. Thus, there is no a causal connection between Ms. Adlerstein's claimed injury and the alleged Privacy Act violation. *See Houlihan v. OPM*, 909 F.2d

383, 384 (9th Cir. 1990).  Mr. Valenzuela and Mr. Mensing claims fail for the same reason.  Both allege that they are volunteers for an organization that supports and works with migrants.  Compl. ¶¶ 64, 68, 110.  But these allegations demonstrate only that Mr. Valenzuela and Mr. Mensing suffered noneconomic harm—the reduction in their volunteer work—not actual damages.  *See Cooper*, 566 U.S. at 304.

For these reasons, the Court should dismiss Plaintiffs' accuracy and catch-all claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiffs' constitutional claims.  In the alternative, the Court should grant Defendants summary judgment as to Ms. Adlerstein's Fourth Amendment claim based on her arrest.  The Court should also dismiss Plaintiffs' Privacy Act access claims against CBP, as well as their accuracy and catch-all claims against all Defendants.

Dated: February 10, 2020          Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General, Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch, Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch, Civil Division

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

 /s/ Robert M. Norway
ROBERT M. NORWAY
Trial Attorney (D.C. Bar No. 490,715)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, N.W., Washington, D.C. 20530
Telephone: (202) 353-0889
Email:  robert.m.norway@usdoj.gov
*Counsel for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ahilan Arulanantham
Mohammad Tajsar
ACLU - Southern California
1313 W 8th St.
Los Angeles, CA 90017
213-977-5211
Email: aarulanantham@aclusocal.org
Email: mtajsar@aclusocal.org

Christine Wee
ACLU - Phoenix, AZ
P.O. Box 17148
Phoenix, AZ 85011
Email: cwee@acluaz.org

Robert Alexander Pilmer
Kirkland & Ellis LLP - Hope St., Los Angeles, CA
333 S Hope St.
Los Angeles, CA 90071
213-680-8400
Email: alex.pilmer@kirkland.com

       /s/ Robert M Norway
ROBERT M. NORWAY
Trial Attorney (D.C. Bar No. 490,715)