1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8
    Ana Adlerstein, et al.,                    )
9                                              )
              Plaintiffs,                      )
10                                             )        No. CIV 19-500-TUC-CKJ
    vs.                                        )
11                                             )           **ORDER**
    United States Customs and Border           )
12  Protection, et al.,                        )
                                               )
13            Defendants.                      )
    _____        )

14

15        Pending before the Court is the Joint Stipulation for Protective Order (Doc. 49).

16  While the parties agree certain documents should be protected, they disagree as to the scope

17  of a protective order.  Specifically, the parties dispute whether (1) counsel of record and the

18  parties in three separate proceedings should be included as persons to whom documents

19  designated "Confidential - Subject to Protective Order" or a similar marking may be

20  disclosed, (2) the protective order should allow for parties to designate certain information

21  as "Attorneys' Eyes Only Information," and (3) whether the protective order should include

22  a provision regarding "Inadvertent Production of Privileged or Otherwise Protected

23  Material."

24  *Protective Orders*

25        While "the fruits of pre-trial discovery are, in the absence of a court order to the

26  contrary, presumptively public[,]" *Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 691

27  (9th Cir. 2012), *overruled on other grounds*, *citation omitted*, a court may issue a protective

28

order for good cause.  *See* Fed.R.Civ.P. 26(c).  This rule "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)."  *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982); *see also Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622–23 (9th Cir. 1999), *citation omitted* (purpose of a protective order is "to prevent harm by limiting disclosure of relevant and necessary information").  As stated by another district court:

> Protective orders are used "not only to resolve individual discovery disputes, but also to expedite the flow of discovery in cases involving a large amount of sensitive information."  They "are expressly designed to assure that a defendant's right to a fair trial [is] not overridden by the confidentiality and privacy interests of others."

*United States v. Cudd*, 534 F. Supp. 3d 48, 52–53 (D.D.C. 2021), *citations omitted*.

"Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary."  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002).  To satisfy this "good cause" standard, the party opposing disclosure must show "'that specific prejudice or harm will result' if the protective order is not granted."  *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011), *citation omitted*.  However, while a protective order prevents a party from disseminating information obtained through use of the discovery process, a "party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

*Disclosure to Persons Related to Specified Separate Proceedings*

The parties disagree whether protected materials may be shared with both plaintiffs and counsel of two ongoing cases, *Guan v. Wolf*, No. 1:19-cv-06570 (E.D.N.Y.) and *Dousa v. United States Department of Homeland Security*, 3:19-cv-01255 (S.D. Cal.)., and one case on appeal, *Phillips et al v. United States Customs and Border Protection*, No.

1    2:19-cv-06338-SVW-JEM (C.D. Cal.), appeal filed, No. 21-55768 (July 21, 2021).

2    Plaintiffs point out that all of the cases "revolve around the same constellation of

3    facts, involve the same constellation of government actors, and concern violations of the

4    same sets of core constitutional rights" and requests that the shared disclosure under the

5    protective order issued in *Phillips* be reciprocal. Stipulation (Doc. 49, p. 21). First, Plaintiffs

6    asserts the protected information disclosed in this litigation will likely be discoverable in the

7    other cases because the cases all challenge the same government programs and allege the

8    government largely violated the same legal protections in all of the cases. However,

9    Defendants point out that the individual cases involve different plaintiffs and different points

10   of entry and there is no indication documents from this case will be relevant in the other

11   cases. Further, Defendants argue Plaintiffs are the ones that chose to separate the cases

12   amongst different districts and plaintiffs' counsel and that "resulting differences in protective

13   orders is mostly a result of this strategic choice on the part of plaintiffs and their counsel,

14   each of whom have been willing to agree to different protective order versions in each case."

15   Stipulation (Doc. 49, p. 11).

16   As summarized by another court:

17   This Circuit "strongly favors access to discovery materials to meet the needs of parties
     engaged in collateral litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d
18   1122, 1131 (9th Cir.2003). A collateral litigant, however, "should not be granted
     automatic access to a defendant's confidential documents." *Kelly v. Provident Life
19   & Accident Ins. Co.*, No. 04–CV–0807–WQH (JMA), 2008 WL 5132851, at *3
     (S.D.Cal. Dec.5, 2008). "[T]he collateral litigant must demonstrate the relevance of
20   the protected discovery to the collateral proceedings and its general discoverability
     therein." *Foltz*, 331 F.3d at 1132. This relevance requirement "prevents collateral
21   litigants from gaining access to discovery materials merely to subvert limitations on
     discovery in another proceeding." *Id*.
22
     In applying these principles, the court that entered the protective order must "satisfy
23   itself that the protected discovery is sufficiently relevant to the collateral litigation that
     a substantial amount of duplicative discovery will be avoided by modifying the
24   protective order." *Id*. That court also "must weigh the countervailing reliance interest
     of the party opposing modification against the policy of avoiding duplicative
25   discovery." *Id*. at 1113. Disputes over the ultimate discoverability of specific
     materials covered by the protective order must be resolved by the collateral court. *Id*.
26
27   *Long v. TRW Vehicle Safety Sys., Inc.*, No. CV-09-2209-PHX-DGC, 2010 WL 1740831, at

28
                                              - 3 -

*1 (D. Ariz. Apr. 29, 2010).  As in *Long*, Plaintiffs in this case:

> seek to circumvent all of these principles and procedures by including, in the first instance, a sharing provision in the protective order to be entered in this case.  Stated differently, Plaintiffs seek the ability to share confidential and proprietary material discovered in this case "with collateral litigants without needing to seek to modify the protective order and obtain a relevance determination from the Court, and without requiring the collateral courts to resolve any disputes which may arise with respect to the discoverability of the materials in the collateral cases." Kelly, 2008 WL 5132851, at *2.

*Id*.

This case and the other cases involve the same government programs.  Documents regarding those programs would, presumably, be relevant and discoverable in each of the cases.  Although Plaintiffs assert protected information in this case is likely discoverable in the other cases, the differences between the cases, i.e., the specific plaintiffs, ports of entry, and factual circumstances of each case do not share any obvious relevance.  Plaintiffs assert the lack of shared disclosure will burden the litigants and parties, cause delays, and result in litigating discovery issues.  However, it is that litigation of discovery issues that determines whether the material is relevant and appropriately disclosed in a case.

The Court finds it is not appropriate to include counsel of record and the parties of the three separate proceedings as persons to whom documents designated "Confidential - Subject to Protective Order" or a similar marking may be disclosed in the protective order issued in this case.

*Designation of Certain Information as "Attorneys' Eyes Only Information"*

Defendants request an "Attorneys' Eyes Only Information" provision be included in the protective order.  Indeed, they point out that such provisions have been included, without objection, in protective orders in the other cases.  Additionally, it is expected that the discovery is likely to include:

> the production of highly sensitive information and documents, such as Defendants' intelligence-collection efforts, internal policies, staffing and technology information, and training materials that, if disclosed may endanger or jeopardize the safety of law enforcement personnel and public safety, namely the integrity of the United States'

borders, by for instance giving individuals a road map to avoid or otherwise circumvent law enforcement efforts.

Stipulation (Doc. 49, p. 12).   "Defendants expect to produce intelligence documents, containing operational information that has been analyzed and interpreted, notably sensitive Field Encounter Reports (FEs) and Field Information Reports (FIRs).  These documents could enable individuals to identify information gaps, methods, trends, adversary intentions, threat capabilities, and vulnerabilities within a given area of responsibility."  (*Id*. at 13). Other documents may "describe staffing numbers and/or the locations and capabilities of CBP's technology, giving individuals a road map to avoid or otherwise circumvent enforcement efforts, and ultimately jeopardizing the integrity of the U.S. border." (*Id*. at 14). Defendants assert the knowledge of this information, irrespective of the agreement to not disclose the information beyond this litigation, could cause harm to law enforcement and public safety; in fact, this information could potentially assist future migrants in avoiding detection or apprehension.

The proposed provision would still provide the disclosure to Plaintiffs' counsel, but would "restrict the dissemination, reproduction, and storage of sensitive materials—even between defense counsel and [Plaintiffs]." *United States v. Cudd*, 534 F. Supp. 3d 48, 55 (D.D.C. 2021).  Additionally, the provision sets forth a procedure in which an "Attorneys' Eyes Only Information" designation can be reviewed by the Court.

Although Plaintiffs argue Defendants have not explained with particularity what risks Plaintiffs themselves pose should they have access information, the Court finds such a consideration is not reasonable in determining whether to include the provision in the protective order.[1]  In effect, Plaintiffs are asking the Court to consider each individual piece of disclosure asserted to be "Attorneys's Eyes Only Information" before issuing a protective

---

[1] The Court notes that, "even with the best intentions," Plaintiffs may not be able "to avoid even the subconscious use of confidential information revealed through discovery[.]" *TVIIM, LLC v. McAfee, Inc.*, No. 13-CV-04545-VC (KAW), 2014 WL 2768641, at *2 (N.D. Cal. June 18, 2014), *citation omitted* (discussing scientific and technical information in patent case).

- 5 -

order.  This is not an efficient use of judicial resources.  Rather, a procedure to afford the parties to determine which documents are actually disputed and then present the dispute to the Court would allow first the parties, and then the Court, to consider whether disclosure should be limited to "Attorneys' Eyes Only Information."

The Court finds Defendants have shown good cause to include an "Attorneys' Eyes Only Information" provision in the protective order.  Indeed, the inclusion of such a provision will act to reduce any harm to Defendants' interests in not allowing wide-spread dissemination of sensitive information.  *See e.g., Al Otro Lado, Inc. v. Wolf*, No. 3:17-CV-2366-BAS-KSC, 2020 WL 3487823, at *3 (S.D. Cal. June 26, 2020).  However, the Court finds it appropriate to add the following language to this provision:  "The Producing Party [will] make every effort to provide discovery in a manner that will allow for most discovery to be produced without such designations." *See Cudd*, 534 F.Supp.3d at 54.

Additionally, the Court agrees with Plaintiffs that the procedure proposed by Defendants is unduly burdensome and unreasonable.  The Court finds it appropriate to unify the process for challenging "Attorneys' Eyes Only Information" with the process for challenging standard confidentiality records.

*"Inadvertent Production of Privileged or Otherwise Protected Material" Provision*

Defendants request a provision regarding the inadvertent production of not only material subject to attorney-client or work product protection as covered in Fed.R.Evid. 502(b), but also "other governmental privileges and protections as well, including but not limited to privileges over documents that were part of an agency's deliberative process and privileges and protections over law enforcement sensitive documents." Stipulation (Doc. 49, pp. 33-4).  Additionally, the proposed provision would expand the provision of Fed.R.Evid. 502(b) that provides that inadvertent disclosure does not operate as a waiver to not only this litigation, but also to other federal or state proceedings.  The provision provide a procedure by where, if needed, the parties may raise a privilege or protection issue to the Court.

1    Plaintiffs assert, however, that this proposed provision has the effect of rewarding the

2    Defendants if they fail to conduct privilege reviews with reasonable care.  Further, even if

3    inadvertent disclosure is made, Plaintiffs assert Defendants has not shown the proposed

4    Protective Order would not adequately protect against the risk of disclosure to an unexpected

5    third party.  Plaintiffs state:

6         It is entirely a speculative risk that the Government will designate some information
          as Protected, inadvertently disclose it to Plaintiffs pursuant to the Protective Order,
7         who then in turn disclose the information to some other third party in violation of the
          Protective Order, and that third party refuses to comply with the Government's
8         demands to return or destroy the records. Even if such a risk was foreseeable, the
          proper avenue for guarding against it is entry of a Protective Order preventing third
9         parties from accessing any disclosed records, not rewarding the Government for
          failing to take reasonable care in producing what they themselves claim are sensitive
10        government records.

11   *Id*. at 27.  Additionally, Plaintiffs point out that sensitive law enforcement information and

12   records protected by the deliberative process or official information privilege are generally

13   not afforded as much protection as the attorney-client privilege, as they are qualified

14   privileges that do not absolutely guard the covered information from disclosure. *F.T.C. v.*

15   *Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) ("The deliberative process

16   privilege is a qualified one" that may be overcome if a litigant's "need for the materials and

17   the need for accurate fact-finding override the government's interest in non-disclosure."); *Al*

18   *Otro Lado, Inc. v. Wolf*, No. 3:17-CV-2366-BAS-KSC, 2020 WL 3487823, at *2 (S.D. Cal.

19   June 26, 2020) ("The federal law enforcement privilege is a qualified privilege designed to

20   prevent disclosure of information that would be contrary to the public interest in the effective

21   functioning of law enforcement.").  In fact, where the information has already been

22   disseminated, e.g., through the press or as the subject of a public inquiry or internal

23   investigation, its further dissemination cannot be restrained.  *Smith v. Daily Mail Pub. Co.*,

24   443 U.S. 97, 103 (1979) (once truthful information is "in the public domain," a court cannot

25   constitutionally restrain its dissemination).

26   Here, the proposed Protective Order thoroughly covers the disclosure of sensitive

27   information.  In fact, as discussed, *infra*, the Court has found provisions to ensure the

28

1  inappropriate disclosure of sensitive information is not made.  It appears the only time where

2  the proposed provision would be at issue is where Defendants err in its disclosure and

3  Plaintiffs or their counsel disclose the information in contravention of the proposed

4  Protective Order.  The Court finds it is not appropriate to include this provision in the

5  Protective Order.

6

7  *Status of the Proceedings*

8        As discussed in the Joint Status Report Regarding Parties' Proposed Protective Order

9  And Settlement Discussions (Doc. 50), the stay of discovery has concluded.  Defendants seek

10  an extension of the stay to focus their efforts on achieving a resolution of this matter through

11  settlement; they request the stay be extended to January 14, 2021.  Defendants assert any

12  prejudice from this extension would be nonexistent or minimal.  Plaintiffs, however, believe

13  discovery should progress while the settlement efforts proceed.

14        This matter is more than two years old.  Although the requested extension is minimal,

15  there is not any reason for the Court to conclude settlement is more likely with the requested

16  extension.  The Court declines to further extend the stay of discovery.

17        Accordingly, IT IS ORDERED:

18        1.    The Joint Stipulation for Protective Order (Doc. 49) is ADOPTED AS SET

19  FORTH HEREIN.

20        2.    The Court will issue the Protective Order as a separate Order.

21        3.    The Joint Stipulation for Temporary Protective Order (Doc. 51) is NOT

22  ADOPTED as moot.

23        DATED this 20th day of December, 2021.

24

25

26                              Cindy K. Jorgenson
                              United States District Judge
27

28                                    - 8 -