WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ana Adlerstein, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>United States Customs and Border Protection, et al.,<br><br>    Defendants. | No. CIV 19-500-TUC-CKJ<br><br>**ORDER** |

    Pending before the Court is the Motion to Compel Further Responses from Defendants to Plaintiffs' Request for Production of Documents, Set One ("Motion to Compel") (Doc. 66) filed by Plaintiffs Ana Adlerstein ("Adlerstein"), Jeff Valenzuela ("Valenzuela"), and Alex Mensing ("Mensing") (collectively, "Plaintiffs"). Defendants U.S. Customs and Border Protection; Troy A. Miller, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection; U.S. Immigration and Customs Enforcement; Tae D. Johnson, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; Federal Bureau of Investigation; and Christopher A. Wray, in his official capacity as Director of the Federal Bureau of Investigation ("Defendants" or "the government") have filed a response (Doc. 69) and Plaintiffs have filed a reply (Doc. 74).

    Oral argument has been requested. Because the parties have thoroughly presented the facts and briefed the issues, the Court declines to set this matter for oral argument. *See* LRCiv 7.2(f); 27A Fed.Proc., L. Ed. § 62:361 (March 2021) ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion.")

I. *Procedural Background*

Plaintiffs filed a civil rights Complaint on October 16, 2019. The Complaint alleged claims for Count I: Violation of the Fourth Amendment; Count II: Violation of the First Amendment, and; Count III: Violation of the Privacy Act, 5 U.S.C. § 552a(a)-(1). An Amended Complaint was filed on October 26, 2020 (Doc. 33). The Amended Complaint alleges claims of Count I: Violation of Fourth Amendment, referring to the seizures (detentions, arrests, physical restraints, and interrogations of Plaintiffs); Count II: Violation of the First Amendment, as to collection and maintaining private information regarding Plaintiffs Valenzuela and Mensing and interfering with Adlerstein's right to free association, and; Count III: Violation of the Privacy Act, as to the collection and maintaining records describing private and protected information about Plaintiffs.

Plaintiffs seek injunctive relief, declaratory relief, and compensatory damages.

In their Motion to Compel, Plaintiffs seek further responses to Plaintiffs' Request for Production of Documents, Set One, Nos. 5-9, 12-15, 27, 33, 38, 53, 84, 86-91 (the "Requests") and the imposition of monetary sanctions in the amount of $32,178.00 against Defendants and their counsel of record for the attorneys' fees incurred by Plaintiffs in bringing the Motion to Compel.

In this case Plaintiffs allege, in part, the government targeted them for surveillance, intelligence collection, and detention at the border in retaliation for their associations with numerous organizations, including a cross-border migrant rights activist group called Pueblo Sin Fronteras, Ajo Samaritans, and a humanitarian migrant shelter in Sonoyta, Mexico called Casa del Migrante. In their Motion to Compel, Plaintiffs seek discovery relating to records the government maintains about these organizations. Defendants argue their interactions with non-parties are not relevant to this non-class action case and assert they have agreed to produce all documents relating to the three Plaintiffs, including all documents concerning the basis for their treatment of Plaintiffs.

Plaintiffs' Requests for Production includes:

- **RFPs Nos. 5-9, 12-15, 27, 33, 38, and 86-90 (concerning affiliated organizations)**: These Requests seek[] records concerning the gathering of intelligence on journalists, activists, and organizers by the Government during Operation Secure Line, as well as records concerning Operation Secure Line generally. In subsequent meet and confer correspondences, Plaintiffs narrowed these Requests by seeking only those records concerning individuals affiliated with Pueblo Sin Fronteras, Ajo Samaritans, No More Deaths, and Casa del Migrante in Sonoyta, Mexico.

- **RFP No. 53 (concerning Lukeville)**:  This RFP seeks records relating to the treatment of individuals at the Lukeville Port of Entry who were detained and arrested for reasons like those that the Government used to justify Ms. Adlerstein's arrest.

- **RFP No. 84 (concerning request to Mexico)**:  This RFP seeks documents relating to a specific email correspondence from the CBP to Mexican officials, requesting that the Mexican officials deny certain individuals entry into Mexico.

- **RFP No. 91 (concerning the TTRT)**:  This RFP seeks documents concerning "instructions and/or guidance to the Tactical Terrorism Response Team" (TTRT) from CBP's Emergency Operations Centers. Plaintiffs suspect that TTRT, a specialized police unit within CBP, conducted at least some of the unconstitutional interrogations of Plaintiffs Mensing and Valenzuela.

Motion to Compel (Doc. 66-1, p. 8); *see also*, Separate Statement of Disputed Discovery Requests In Support of Plaintiffs' Motion to Compel Further Responses from Defendants To Plaintiffs' Request for Production of Documents, Set One (Doc. 66-2).  Plaintiffs assert the government has refused to provide any records concerning the affiliated organizations and refused to provide any records concerning other Lukeville detentions and arrests.  As to the request to Mexican officials, the government agreed to produce only the non-privileged portions of documents concerning Plaintiffs and Operation Secure Line.  Similarly, as to the RFP relating to the Tactical Terrorism Response Team ("TTRT"), the government agreed to produce non-privileged portions of any documents in their possession concerning Plaintiffs and the allegations in the Complaint.  The government asserts the requests are not relevant as they seek documents not concerning Plaintiffs, not proportional to the needs of the case, and would be burdensome to search for, review, and produce.

*Discovery in General*

The applicable rule states:

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery

is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b). The provision of being reasonably calculated to lead to admissible evidence has been taken out of the rule.

Additionally, the proportionality limit included in the rule is "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed.R.Civ.P. 26(b) advisory committee note (2015 amendment). Further, a 2000 amendment changed the permitted discovery to require that discovery be relevant to "the claim or defense of any party" rather than the lawsuit's "subject matter." *Toman v. Glomboske*, No. 820CV00046JWHKESX, 2021 WL 3503062, at *5 (C.D. Cal. Mar. 25, 2021), *citation omitted*. Indeed, the Advisory Committee Note explains:

> The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

Fed.R.Civ.P. 26(b)(1) Advisory Committee Note (2000 Amendment).

Further, "[d]istrict courts enjoy wide discretion in deciding relevancy for discovery purposes." *Sinclair-Lewis v. Smith's Food & Drug Centers, Inc.*, No. 220CV02063JCMVCF, 2022 WL 4112199, at *1 (D. Nev. Feb. 24, 2022); *see also* said, *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.").

Additionally, "[i]n deciding discovery disputes, courts must be careful not to deprive

a party of discovery that is reasonably necessary to its case. *Heinrich v. Ethicon, Inc.*, No. 220CV00166CDSVCF, 2022 WL 17406510, at *2 (D. Nev. Dec. 2, 2022), *citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 680 (9th Cir. 1980). Indeed, the purpose of discovery is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958), *citation omitted*, and "to narrow and clarify the basic issues between the parties," *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

*Discovery Relating to Persons and Entities Affiliated with Plaintiffs*

Plaintiffs argue they are entitled to discovery about entities they allege were, in part, the reason for the government's treatment of Plaintiffs. They assert the records are relevant to their three theories of constitutional liability (First Amendment retaliation theory, records collection theory of First Amendment liability, and Fourth Amendment unlawful seizure claim). Because the RFPs request information not concerning Plaintiffs, Defendants assert the requests are not proportional to the needs of the case. Specifically, Defendants assert the documents are not relevant and the discovery would impose a significant burden on Defendants.

Adlerstein alleges that the government arrested her for humanitarian work she engaged in with Ajo Samaritans. This work involved accompanying migrants to a port of entry. Valenzuela and Mensing allege that the government targeted them for surveillance and interrogations because of their expressive activity and association with migrant rights organizations, principally Pueblo Sin Fronteras. Plaintiffs point out that to establish retaliation, they must demonstrate, *inter alia*, that their protected activities were a substantial or motivating factor in the government's conduct; they argue the government acted against them because of the associations with the entities. Plaintiffs anticipate the government will either deny the associations motivated their actions or argue that such targeting on the basis

of the associations was a legitimate exercise of its law enforcement obligations. "By demonstrating through discovery that the Government did not maintain legitimate reasons to target Plaintiffs or Plaintiffs' associated organizations, Plaintiffs can challenge as "false and pretextual" the Government's proffered justification for targeting them." Motion to Compel (Doc. 66-1, p. 12), *citations omitted*. Plaintiffs assert what the government knew about the organizations and how the government treated members of these organizations is relevant to whether the government's targeting of Plaintiffs was legitimate or pretextual.

Arguably, if it was Plaintiffs' affiliation with any of the non-party entities that provided any motivation for its conduct, the government's disclosure of all non-privileged documents related to Plaintiffs would necessarily include documents that refer to Plaintiffs and those entities. Further, the Court agrees with Defendants that, in this non-class action, Plaintiffs "must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). However, it is possible some documents refer to Plaintiffs as associated with the entities, while other documents discuss the entities (including suspicions of suspected criminal activity) without reference to the named Plaintiffs.

Plaintiffs also assert discovering what information the government maintains about the organizations is also relevant in determining whether the continuing retention of information about Plaintiffs is justified and consistent with a legitimate law enforcement need. For example, if information reveals members of an entity engage in human trafficking or drug smuggling, the government may argue it can possess records about the activities of its other members. But, if the government does not have documents supporting such crimes or suspicions of crimes or has documents with exculpatory information, Plaintiffs may be able to argue Defendants' treatment of Plaintiffs was consistent with an ongoing pattern of retaliation against members of the entities.

Plaintiffs also argue:

[T]o establish violations of the Fourth Amendment, Plaintiffs are entitled to discover

>whether detentions of Plaintiffs were motivated not by ordinary border control purposes, but either by garden variety criminal investigations (that require reasonable suspicion) or by illegitimate retaliatory purposes. (Order on MTD, Dkt. 30 at 26–27 [describing relevance of motivation and programmatic purpose of seizures to Fourth Amendment analysis].) Understanding what information the Government possessed about organizations it affiliated with Plaintiffs (including whether they reasonably suspected the organizations and their members of criminal activity) will allow Plaintiffs to determine whether Plaintiffs' membership in these organizations motivated their border seizures.

Motion to Compel (Doc. 66-1, p. 16). Defendants argue, however, the documents it has already agreed to produce would include any documents concerning their motivations for the treatment of Plaintiffs. Generally speaking, if it was a Plaintiff's affiliation with one of the entities that was part of the motivation for conduct, the Court finds it reasonably plausible that some documents may refer to Plaintiffs as members of the entities, while other documents may just refer to the entities' members in general, without specifying names.

Plaintiffs assert the government, in arguing the RFPs are overbroad and not proportional to the needs of the case, has failed to offer concrete information about the actual burden it faces. Indeed, Plaintiffs assert the it does not anticipate an overwhelming amounts of hits to result from the limited set of search terms within the entities. Plaintiffs point out the government's disclosure so far has amounted to approximately 1,700 documents, and speculate the "total number of documents produced in response to the first round of written discovery is unlikely to exceed even 5,000, and will probably be far fewer." Motion to Compel (Doc. 66-1, p. 15). Plaintiffs assert the relevance of this search of the government agencies to review and produce a "narrow set of documents directly related to Plaintiffs' constitutional claims against them" far outweighs any burden that may be imposed. *Id*.

The government disputes Plaintiffs' speculation as to the number of documents such a request is likely to produce. For example, a review of emails and their attachments of one agency (CBP) reveal 12,721 potential documents (not pages) that refer to one or more of the four entities. Elaine Dismuke Decl. ¶ 8 (Doc. 70, p. 3). A review of just those documents is estimated to take at least 420 hours of CBP agency attorney time. *Id*. at 9. Similarly, the FBI estimates it would take about five weeks by FBI personnel to conduce a similar review.

- 7 -

1  Deborah A. Crum Decl. ¶¶ 10-12 (Doc. 69-1, p. 5) (reviewing 4,928 FBI documents and over
2  5,000 documents provided by other agencies). In total, the "three defendant agencies have
3  identified over 23,000 potentially responsive documents concerning the four non-party
4  organizations." Response (Doc. 69, p. 6), *citing* Dismuke Decl. ¶ 8, Crum Decl. ¶ 10,
5  Michael Craig Decl. ¶ 4.
6       As an alternative, Defendants have proposed:
7       The requests for these documents be postponed unless and until actual evidence supporting that claim emerges, given the considerable burdens associated with
8       searching for, reviewing, and producing these documents.
9  Response (Doc. 69, p. 8).
10       It is possible, as previously stated, and may even be likely, some documents refer to
11  Plaintiffs as associated with the entities, while other documents discuss the entities (including
12  suspicions of suspected criminal activity) without reference to the named Plaintiffs. It is
13  likely that reviewing these sets of documents in conjunction with each other is necessary to
14  grasp the full picture of the law enforcement interests in Plaintiffs, making this disclosure
15  important in resolving the issues in this case. Considering the facts and circumstances of this
16  case, the Court finds such documents to be relevant to Plaintiffs' claims. However, the Court
17  also recognizes production of these documents would place a significant burden on
18  Defendants. In light of the importance of the issues at stake in the action, i.e., alleged
19  constitutional violations and the importance of the discovery in resolving the issues, the
20  Court concludes the burden or expense of *some* of the requested discovery does not outweigh
21  its likely benefit.
22       Considering the proportional needs of the case, the Court finds it appropriate to permit
23  discovery pursuant to the RFPs, but limit the time frame from which documents must be
24  produced. Most of the applicable RFPs related to this request contain no limiting time frame,
25  while some have a time frame of January 1, 2017, to present. *See e.g.*, RFP 5. The further
26  away the documents are from the time of the alleged incidents in this case reduces the
27  possibility of relevant information being found in the potential disclosure. The significant
28

burden placed on Defendants for a greater time period outweighs any likely benefit. The Court finds it appropriate, therefore, to limit the time frame to January 1, 2018, through June 30, 2020.[1]

Further, the Court agrees with Plaintiffs that delaying the production is not appropriate. Plaintiffs are entitled to such information prior to, e.g., the taking of depositions. The Court will grant the Motion to Compel as to RFPs 5-9, 12-15, 33, 38, 86-90, but limit the time frame to January 1, 2018, through June 30, 2020.

*Arrests at the Lukeville Port of Entry*

Plaintiffs assert to establish Adlerstein's Fourth Amendment claim, they need to show the arrest was unjustified. To show this, Adlerstein will need to establish the arrest was pretextual and assert they are entitled to discover whether others at the Lukeville Port of Entry have been detained or arrested for similar reasons as those used to arrest Adlerstein. Plaintiffs assert if such arrests occurred, whether the facts underlying those arrests were similar to those in Adlerstein's circumstances is relevant in whether Adlerstein's arrest was common or uncommon; in other words, whether Adlerstein's arrest was pretextual or standard practice.

The government argues, however, if other persons were arrested for similar conduct, that would tend to undermine Adlerstein's claims of pretext (i.e., Adlerstein was treated the same as similarly situated persons). Further, if no other persons were arrested for similar conduct, there is no basis to conclude if that was because Adlerstein was singled out or agents simply did not encounter others engaging in similar conduct. The government also points out that Plaintiffs' request which seeks evidence of others treated similarly would not

---

[1] The allegations regarding border incidents as to Adlerstein occurred in March and May 2019. The allegations regarding border incidents as to Valenzuela occurred in December 2018 and January 2019. The allegations regarding border incidents as to Mensing occurred between June 10, 2018, and October 15, 2019.

1  provide relevant comparator evidence. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603
2  (9th Cir. 2004); *compare Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 44
3  (D.D.C. 2017) (discovery not warranted where documents did not include comparator
4  information).  Rather, the request does not seek to find others who were treated differently,
5  but to find those that were similarly treated.

6        Plaintiffs argue this, in effect, concedes the relevance of the documents because
7  Plaintiffs are entitled to evidence that both supports and undermines their claims.  Indeed,
8  although Fed.R.Civ.P. 26 does not define relevant, Fed.R.Evid. 401 states "[e]vidence is
9  relevant if: (a) it has any tendency to make a fact *more or less probable* than it would be
10 without the evidence; and (b) the fact is of consequence in determining the action."
11 Fed.R.Evid. 401, *emphasis added*.

12       Further, Plaintiffs clarify how other person's arrests could establish whether Adlerstein
13 and other person's arrests were pretextual:

14     The declaration of Ms. Adlerstein's arresting officer states that, "[b]ased upon what I had just observed and heard, as well as upon my training and experience," the officer "believed that I had sufficient probable cause to arrest Ms. Adlerstein for an attempted violation of 8 U.S.C. §1324." (*Id*.) Understanding the basis for the officer's probable cause determination will depend in part on what officers at that port have, in the officer's words, experienced and been taught—including whether they have made detentions or arrests based on similar facts.

18 Reply (Doc. 74, p. 6).

19       The Court agrees with Plaintiffs that this discovery may produce documents with
20 evidence that may make allegations in this case more or less probable.

21       Plaintiffs dispute the government's assertion this proposed RFP is not proportional to
22 the needs of the case, in light of the burden of searching for and producing arrest records
23 from this port.  Plaintiffs point out there have only been 642 arrests at Lukeville since
24 January 1, 2018, and the requested search for factual circumstances similar to Adlerstein's
25 would likely produce only a fraction of those arrests.  However, the government points out
26 the documents would need to be reviewed for both responsiveness and privilege:

27     CBP estimates that the responsiveness review alone would take Port personnel over

> 720 hours to complete, or 91 eight-hour duty days of dedicated effort. [Edward C.] Rodriguez Decl. ¶ 4. This diversion of Port personnel would impede Port operations and enforcement efforts. Rodriguez Decl. ¶ 5. Following the responsiveness review, the privilege review would be likely to be especially involved because these documents concern federal law enforcement investigations, some of which may be ongoing, and thus are likely to contain information protected by the law enforcement privilege.

Response (Doc. 69, p. 11).

Although the Court agrees with Plaintiffs that this information is relevant, the Court also concludes the burden placed on Defendants is significant. Further, the request does not specify if it is only seeking arrests for 8 U.S.C. § 1324 or also seeking arrests for other violations. The Court will grant the Request for Production No. 53, but limit it to those documents related to arrests pursuant to 8 U.S.C. § 1324, the bringing in and harboring certain aliens.

Moreover, considering the proportional needs of the case, the Court finds it appropriate to permit discovery pursuant to this RFP, but limit the time frame from which documents must be produced. In RFP 53, Plaintiffs seek documents regarding similar arrests at the Lukeville Port of Entry from January 1, 2018, to the present. The Court finds the importance of the discovery of and relevance of similar arrests not temporally close to Adlerstein's date of arrest, May 5, 2019, have limited relevance. For similar arrest not temporally close to Adlerstein's date of arrest, the significant burden placed on Defendants outweighs any likely benefit. The Court finds it appropriate, therefore, to limit the time frame of this RFP to January 1, 2019, through December 31, 2019.

The Court will grant the Motion to Compel as to RFP 53, but limit the time frame to January 1, 2019, through December 31, 2019, and limit the disclosure to those documents related to arrests pursuant to 8 U.S.C. § 1324, the bringing in and harboring certain aliens.

*CBP Request Mexican Officials Deny U.S. Citizens Entry into Mexico*

A September 20, 2021, Department of Homeland Security OIG report revealed the government created and used a watchlist to request Mexican officials deny 14 U.S. citizens

1  entry into Mexico and concluded "'CBP had no genuine basis for asking Mexico to deny entry to these U.S. citizens' and that the reasons stated for the request were false." Motion to Compel (Doc. 66-1, p. 17), *quoting* Tajsar Decl, Ex. 1 (Doc. 66-3).

Plaintiffs assert these records are likely to disclose the government's interest in detaining and arresting Plaintiffs, and those similarly situated to them, despite their immigration status, any legitimate law enforcement interest, and the legality or illegality of such a request. Plaintiffs speculate this critical event will likely reveal a government pattern of retaliatory conduct of other humanitarian workers and activists like Plaintiffs, which is relevant to establishing whether Plaintiffs themselves were similarly subject to retaliatory conduct.

Because a search for documents concerning Plaintiffs did not result in disclosure of these documents, the Court concludes Plaintiffs were not included in the request to the Mexican officials. If the government's interest in detaining and arresting Plaintiffs could be shown by showing the interest in making this request of Mexican officials, Plaintiffs would almost necessarily have been included in the request. In other words, if the persons named in the request were so similarly situated to Plaintiffs, there is no reason to conclude that Plaintiffs themselves would not have been included in the request. In light of this, the Court finds there is no basis to conclude that this disclosure would be relevant or might lead to admissible evidence.

Because this RFP seeks documents concerning one email, Plaintiffs assert this request will likely only result in a minimal amount of documents and will not impose an undue burden on Defendants. Plaintiffs assert Defendants' compromise offer to produce the documents if Plaintiffs provided search terms does not acknowledge it is the government that is best positioned to determine relevant terms and conditions since only the government knows the underlying facts of the of the event and what occurred following the request to the Mexican officials. Plaintiffs assert requiring them to assist the government in the search shifts the burden of conducting a diligent search onto Plaintiffs. Defendants argue that,

1  without naming individuals in such a search, it would be left with potentially broad search

2  terms.  While a search, for example, of the terms "December 10, 2018" and "email" may

3  produce documents relating to the request, it may also produce every other email made on

4  that date, replies, and attachments, which would then impose a significant burden on

5  Defendants to review and identify documents relating to the request.

6  Additionally, this discovery does not appear to be important in resolving the issues in

7  this case.  In light of the Court's determination that the disclosure would not be relevant and

8  considering the proportional needs of the case, the Court concludes the burden of disclosure

9  outweighs any likely benefit.  The Court will deny the Motion to Compel as to RFP 84.

*Tactical Terrorism Response Team*

Defendants assert that, other than the documents already produced, "CBP has no other documents relating to the EOC's instructions or guidance to TTRT for conducting interrogations and/or questioning to obtain information concerning the migrant caravan, journalists, and/or advocates." Response (Doc. 69, p. 14); *see also* Jose Haro Decl. (Doc. 69-3).  Plaintiffs do not dispute this and agree the request is moot.  The Court will deny the Motion to Compel as to Request for Production No. 91.

*Requested Sanctions for Discovery Misconduct*

Plaintiffs asserts the government's refusal to produce highly relevant documents and information in response to Plaintiffs' RFPs warrants sanctions.  The applicable rule provides, *inter alia*:

> (5) *Payment of Expenses; Protective Orders.*
>
> (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

- 13 -

    (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

    (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

    (iii) other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5).

  Defendants have shown significant burden in producing the disclosure. The Court finds there was a genuine dispute as to whether production of the documents was required under the applicable rule. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1998) (Fed.R.Civ.P. 37(a)(5)(ii)'s "substantial justification" standard is satisfied if there is a genuine dispute or "if reasonable people could differ as to the appropriateness of the contested action"). Further, there is no basis to conclude the parties have acted in bad faith. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171–72 (9th Cir. 1994) (although bad faith is not required for the imposition of sanctions, "good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust"). Rather, it is clear from the briefs submitted to the Court, the parties have acted in good faith and have resolved many of their discovery disputes. The Court finds the imposition of sanctions is not appropriate and will deny the Motion to Compel as to this request.

  Accordingly, IT IS ORDERED:

1. The Motion to Compel Further Responses from Defendants to Plaintiffs' Request for Production of Documents, Set One ("Motion to Compel") (Doc. 66) is GRANTED IN PART AND DENIED IN PART.

2. Defendants shall search for and produce documents related to the affiliated organizations pursuant to Requests for Production Nos. 5-9, 12-15, 27, 33, 38, and 86-90, for the time period of January 1, 2018, through June 30, 2020.

3. Defendants shall search for and produce documents related to Lukeville arrests involving arrests for 8 U.S.C. § 1324, i.e., the bringing in or harboring of certain aliens,

pursuant to Request for Production 53, for the time period of January 1, 2019, through December 31, 2019.

    4.    The Motion to Compel as to Request for Production No. 84 is DENIED.

    5.    The Motion to Compel as to Request for Production No. 91 is DENIED AS MOOT.

    6.    The request for attorneys' fees as a sanction for Defendants' alleged discovery misconduct is DENIED.

DATED this 25th day of April, 2023.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge